[Cite as *State v. Paskins*, 2022-Ohio-3810.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| TYLER PASKINS | : | Case No. 2021 CA 00032 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |



CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 2021 CR 0118




JUDGMENT:      Affirmed




DATE OF JUDGMENT:      October 25, 2022




APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

CHRISTOPHER REAMER      BRIAN A. SMITH
239 West Main Street      123 South Miller Road
Suite 101      Suite 250
Lancaster, OH  43130      Fairlawn, OH  44333

*Wise, Earle, P.J.*

{¶ 1} Defendant-Appellant Tyler Paskins appeals the September 8, 2021 judgment of conviction and sentence of the Fairfield County, Ohio Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

Gabriel Lamp is Injured

{¶ 1} In February 2021, Gabriel Lamp was incarcerated at the Fairfield County Jail on a domestic violence charge involving himself and his girlfriend Jocelyn Matson. Matson was also a friend of appellant herein and regularly took phone calls placed by appellant from the jail. These calls were monitored and recorded. During one such recorded call, a discussion took place between the two about punishing Lamp for what he did to Matson. Appellant agreed to assault Lamp if he was placed in the same pod as Lamp. Sometime after that phone call, Lamp was moved into appellant's pod.

{¶ 2} The pod the men were housed in permitted one hour of recreational time per cell and at all other times inmates remained on lockdown. On March 6, 2021, in a call with Matson, it was suggested that Lamp should be beat up. Appellant stated "it's going to happen." Appellant or his cell mate removed a black putty substance from the window of their cell and placed it in the door jamb of their cell to prevent it from locking properly once their recreational hour was complete. Later, while Lamp was out on his recreational hour, he was seen on surveillance cameras stopping in front of appellant's cell and engaging in conversation. Lamp was next seen entering appellant's cell. Observing this, correction officers stationed in the command center activated the intercom in appellant's cell and heard what sounded like a fight.

{¶ 3}   Deputy Hunter White and other staff responded to the situation. Upon their arrival, Lamp was backing out of appellant's cell. Appellant and his cellmate Stephen Dye were observed standing in the cell sweating and breathing heavily. White grabbed Lamp by the back of his shirt, extracted him from the situation, and put him against the wall outside appellant's cell. Surveillance camera video shows Lamp raising his right arm onto the wall but not his left. Lamp had a bloody nose and immediately told White his arm was hurt. The deputies therefore returned Lamp to his cell without restraining him in anyway. Once at his cell, Lamp walked in on his own power. This was all captured on surveillance video.

{¶ 4}   Minutes after he was returned to his cell, Lamp requested medical attention for his arm injury. He was taken to the jail medical office where he saw nurse Erica Thompson. Thompson took a medical history wherein appellant stated he had been in a fight and believed his arm was broken. After a mobile x-ray appeared to confirm Lamp's concern, he was transported to Fairfield Medical Center by Deputy White for treatment. Lamp was seen by Kristin White, a medical assistant, who took Lamp's medical history and treated his injury. Lamp advised he had been jumped by two inmates at the county jail and was suffering pain in his left forearm. Lamp was diagnosed with an ulna fracture.

{¶ 5}   During transport to and from Fairfield Medical Center, Lamp told Deputy White he entered Dye and appellant's cell because he thought he and appellant were friends. But once Lamp entered the cell, he "started getting hit from all directions."

{¶ 6}   Upon return to the Fairfield County Jail, Lamp was housed by himself in a medical pod. The day after having his arm broken, Lamp called his mother Alison Lamp

from the medical pod. Lamp was upset, crying and complaining of pain. He told his mother appellant had caused his injury.

{¶ 7}   On May 23, 2021, Deputy David Weiland transported Lamp to a follow-up medical appointment. During transport, Lamp told Weiland appellant invited him into his cell and caused his injury.

Indictment and Pre-Trial Proceedings

{¶ 8}   On April 1, 2021, the Fairfield County Grand Jury returned an indictment charging appellant with one count of felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a), a felony of the second degree. Appellant pled not guilty to the charge.

{¶ 9}   On July 15, 2021, the prosecuting attorney and a victim advocate met with Lamp at the jail for trial preparation. During the meeting Lamp suggested his testimony would differ significantly from his previous reports to jail staff, medical personnel, and his mother. Lamp now alleged that after extracting him from appellant's cell, jail staff threw him into his cell and were responsible for his injury.

{¶ 10} On August 2, 2021, after the state put defense counsel on notice of its intent to offer certain statements under a theory of forfeiture by wrongdoing, appellant filed a motion in limine to prevent the state from using Lamp's out of court statements under the forfeiture by wrongdoing exception to the hearsay rule.

{¶ 11} On August 3, 2021, the state filed a motion related to anticipated evidentiary matters. The state requested the trial court permit out of court statements by Lamp to medical professionals be admitted under the medical diagnosis and treatment exception to the hearsay rule, and statements to his mother to be admitted as an excited utterance. The state additionally requested that if Lamp refused to testify, the trial court deem him

unavailable and allow prior statements by Lamp to jail personnel admitted upon a showing that Lamp's unavailability was due in part by appellant's wrongdoing pursuant to Evid.R. 804(B)(6).

{¶ 12} The matter proceeded to a jury trial beginning August 5, 2021. Immediately before trial a hearing was held on the state's motion. The trial court heard arguments from the state and counsel for appellant. The state argued statements by Lamp to the jail nurse and Fairfield Medical Center staff regarding his injury were admissible as statements made for purpose of medical diagnosis and treatment. It further argued that during a phone call to his mother the day after his injury, Lamp was still under the stress of the event and therefore his statement regarding who was responsible for his injury was admissable as an excited utterance.

{¶ 13} An in-chambers hearing was also held with Lamp regarding his testimony. The trial court determined Lamp could properly invoke his Fifth Amendments rights and Lamp did not, therefore, testify at trial.

{¶ 14} During trial, the trial court ultimately permitted two statements made by Lamp to two different medical professionals stating he had been injured by fellow inmates in a fight as statements made for purposes of medical diagnosis and treatment, one statement to his mother the day after the assault stating appellant was responsible for his injury as an excited utterance, and two statements to jail personnel stating appellant was responsible for his injury under the forfeiture by wrongdoing exception to the hearsay rule.

{¶ 15} During his opening statement, trial counsel for appellant admitted Lamp suffered serious physical harm, but denied appellant was the cause. Instead, appellant's

theory was that Deputy White accidently caused Lamp's injury when he extracted Lamp from appellant's cell and "body slammed" him against the wall outside appellant's cell.

{¶ 16} The state elicited the above outlined facts through the testimony of Deputies White and Weiland, Corrections Officer Stephenson, Fairfield Medical Center Physician's Assistant Kristen White, Fairfield County Jail LPN Erica Thompson, Alison Lamp, and Sergeant John Warner.

{¶ 17} Appellant took the stand in his own defense. He admitted knowing his cell door was unsecured and to inviting Lamp into his cell. He alleged Lamp agreed to fight over the issue of the domestic violence against Matson and admitted that they did briefly engage in a physical altercation. He admitted to hitting Lamp in the face once or twice with a closed fist and bloodying Lamp's nose as a result. He alleged his cellmate never got involved. He further admitted he could only see the responding deputy's contact with Lamp as he pulled Lamp out of the cell and did not know what was occurring outside his cell after Lamp was removed.

{¶ 18} After hearing all the evidence and deliberating, the jury found appellant guilty as charged. He was subsequently sentenced to three to four and a half years incarceration.

{¶ 19} Appellant timely filed an appeal and the matter is now before this court for consideration. He raises six assignments of error as follow:

I

{¶ 20} "APPELLANTS CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 21} "THE TRIAL COURT ERRED IN ADMITTING HEARSAY STATEMENTS FROM GABRIEL LAMP UNDER THE "FORFEITURE BY WRONGDOING" HEARSAY EXCEPTION SET FORTH IN EVID.R. 804(B)(6), IN VIOLATION OF APPELLANTS RIGHT TO CONFRONT WITNESSES UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

III

{¶ 22} "THE TRIAL COURT'S FAILURE TO GIVE A JURY INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF ASSAULT CONSTITUTED PLAIN ERROR."

IV

{¶ 23} "THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO REQUEST A JURY INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF ASSAULT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

V

{¶ 24} "THE TRIAL COURT'S ERRORS IN ADMITTING OR EXCLUDING EVIDENCE CONSTITUTED CUMULATIVE ERROR AND DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL, IN VIOLATION OF APPELLANTS RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

VI

{¶ 25} "R.C. 2967.171, ALSO KNOWN AS THE "REAGAN TOKES ACT," WHICH ALLOWS THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTION TO UNILATERALLY EXTEND APPELLANTS SENTENCE, IS UNCONSTITUTIONAL UNDER BOTH THE UNITED STATES CONSTITUTION, ARTS. I, II, AND III, AND AMENDS. V, VI AND XIV, AND THE OHIO CONSTITUTION, ART. I, § 10, AND Art. IV, §§ 1 AND 3(B)(2)."

II

{¶ 26} For ease of discussion, we address appellant's assignments of error out of order. In his second assignment of error, appellant argues the trial court erred in admitting hearsay statements by Lamp under the forfeiture by wrongdoing exception to the hearsay rule, violating his right to confront witnesses against him. While we find the admission of the statements under the forfeiture by wrongdoing hearsay exception was error, we find the error harmless as similar statements were admissible under other hearsay exceptions and in light of other evidence including the surveillance video.

Applicable Law

{¶ 27} "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible unless the statement fits a hearsay exception. Evid.R. 802. Generally, our review of the admission of evidence is limited to a determination as to whether the trial court abused its discretion. However, we review evidentiary rulings implicating the Confrontation Clause de novo. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97, citing *United States v. Henderson*,

626 F.3d 326, 333 (6th Cir. 2010). Here, the challenged statements were made by Lamp, who did not testify.

{¶ 28} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." *State v. Anderson*, 154 Ohio App.3d 789, 2003-Ohio-5439, 798 N.E.2d 1155, ¶ 22 (7th Dist.). Furthermore, the Ohio Constitution, Article I, Section 10, states in relevant part: "* * * In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face * * *."

Forfeiture by Wrongdoing

{¶ 29} Forfeiture by wrongdoing is an equitable exception to a defendant's constitutional right to confront the witnesses against him. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 96, citing *Giles v. California*, 554 U.S. 353, 366, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), and *Reynolds v. United States*, 98 U.S. 145, 158, 25 L.Ed. 244 (1878). In 2001, Ohio codified the forfeiture by wrongdoing doctrine as a hearsay exception under Evid.R. 804(B)(6). The rule provides:

> (B) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> * * *
> (6) Forfeiture by Wrongdoing. A statement offered against a party if the unavailability of the witness is due to the wrongdoing of the party

for the purpose of preventing the witness from attending or testifying. However, a statement is not admissible under this rule unless the proponent has given to each adverse party advance written notice of an intention to introduce the statement sufficient to provide the adverse party a fair opportunity to contest the admissibility of the statement.

{¶ 30} To admit statements under this exception, a prosecutor must show by a preponderance of the evidence: (1) the defendant engaged in wrongdoing which caused the witness to be unavailable, and (2) one purpose for the wrongdoing was to make the witness unavailable to testify. See, *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 84. The state need only show the defendant's wrongdoing, which caused the witness's unavailability, "was motivated in part by a desire to silence the witness." *Id*, at ¶¶ 84, 90.

### Appellant's Arguments

{¶ 31} While the trial court admitted hearsay statements pursuant to three different hearsay exceptions, appellant challenges only those admitted via Evid.R. 804(B)(6). These were statements made by Lamp to Deputy White and Deputy Weiland identifying appellant as the assailant.

{¶ 32} The state based its theory of forfeiture by wrongdoing on six recorded phone calls made from the Fairfield County jail. These calls were placed on a disk in chronological order and provided to the trial court during the motion in limine hearing. Transcript of trial (T.) at 27. The trial court marked the disk as court's exhibit 99. T. 165-

Neither the state nor appellant has provided a transcript of these phone calls. Upon our review of the recordings, it is difficult to make out the voices of Matson and Lamp's mother, and in many parts of the recordings, their statements are unintelligible. Nonetheless, the following can be gleaned from each call:

{¶ 33} The first call was from appellant to Matson on April 1, 2021. Appellant told Matson he was just indicted for felonious assault against Lamp. Appellant told Matson nothing happened, so he did not know why he was charged.

{¶ 34} On April 4, 2021, appellant called Matson and expressed his opinion that Lamp would not make up a story about appellant harming him. He also expressed he and Lamp are good friends and asked "why would I do anything to [Lamp]?"

{¶ 35} On July 15, 2021, after talking to the prosecutor and a victim-witness advocate and telling them jail staff caused his injury, Lamp called Matson distraught over the situation he found himself in. He stated he could not "save one person" without being charged himself. Lamp advised Matson that when he told the prosecutor he was injured when jail staff threw him into his cell, the prosecutor advised he would be charged with perjury if he chose to lie about how he was injured.

{¶ 36} Appellant also called Matson on July 15, 2021. Matson told appellant "they're trying to charge [Lamp] with perjury." Appellant asked why and Matson stated "for telling the truth." Appellant then advised Matson that he saw jail staff "slam" Lamp into the wall outside his cell and also stated this was captured on video. Appellant stated he would testify to that fact and further, that if he was found not guilty Lamp could not be charged with perjury. He told Matson Lamp needed to "stay strong."

{¶ 37} On July 18, Lamp called his mother, Alison Lamp. Alison stated she was advised by Matson, who was advised by appellant, that a video exists of Lamp "being slammed down" by jail staff. Lamp told his mother that was not true.

{¶ 38} On July 29, 2021, Lamp called Matson. He told her that jail staff wanted to return him to the same pod with appellant. He complained that if he were to be returned to the pod his other arm would be broken by "K.Fs," a criminal gang he believed appellant was associated with. Matson belittled Lamp for his belief. She told him because appellant did nothing to Lamp, appellant's associates would also do nothing to Lamp.

{¶ 39} The state argued these phone calls "suggest that [appellant] through [Matson] has intimidated, cajoled or otherwise planted an inconsistent version of events for [Lamp] to report as a witness to suggest that jail staff are the cause of [Lamp's] harm." The state further argued appellant's coercion would cause Lamp to assert his Fifth Amendment privilege against self-incrimination, making Lamp unavailable to testify. State's Motion in Limine Related to Anticipated Evidentiary Matters, August 3, 2021 at 9.

{¶ 40} During an in-chambers voir dire of Lamp, the trial court determined Lamp could properly invoke his Fifth Amendment right not to testify and Lamp did not testify. The trial court then permitted the admission of the statements Lamp made to the deputies pursuant to forfeiture by wrongdoing. In doing so the court stated "in this case there is strong circumstantial evidence which exists to support the state's assertion that Evidence Rule 804(B)(6) applies." T. 183. The trial court further stated this circumstantial evidence was contained in the six phone calls marked as court's exhibit 99 and that its ruling included "fair inferences." *Id.*

{¶ 41} Appellant first argues because he personally had no contact with Lamp in person or otherwise in order to persuade him to change his story, the forfeiture by wrongdoing exception is inapplicable. The rule, however, does not require that a defendant be the one to contacts a witness. Rather, a defendant's intentional procuring of witness's unavailability from trial may be performed by others acting on his behalf. *State v. Henderson*, 2018-Ohio-5124, 125 N.E.3d 235 (7th Dist.) ¶ 24 citing *Giles v. California*, 554 U.S. 353, 361, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008).

{¶ 42} Nonetheless, based the scarcity of intelligible evidence supporting wrongdoing in the phone calls which the state relied to admit appellant's statements to the deputies, we are unable to conclude appellant engaged in wrongdoing. Additionally, while the trial court stated it relied upon strong circumstantial evidence and fair inferences in reaching its decision to admit the statements under Evid.R. 804(B)(6), the circumstantial evidence the trial court relied upon is unfortunately not apparent in the record.

{¶ 43} Our analysis, however, does not end there. "Where other admissible substantive evidence mirrors improper hearsay, the error in allowing the hearsay is generally deemed harmless, since it would not have changed the outcome of the trial." *State v. Williams*, 1st Dist. Hamilton, 2017-Ohio-8898, 101 N.E.3d 547, ¶ 17, citing *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶ 43 (6th Dist.), citing *State v. Byrd*, 8th Dist. Cuyahoga No. 82145, 2003-Ohio-3958, 2003 WL 21710795, ¶ 39. If we find that the statement falls "within a firmly rooted hearsay exception" or bears adequate indicia of reliability, an out-of-court statement may be admissible even when

the declarant is unavailable for cross-examination *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

{¶ 44} Statements made by Lamp to his mother were admitted at trial as excited utterances and appellant does not challenge the admission of these statements.

{¶ 45} Evid.R. 803(2) provides, "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" are an exception to the hearsay rule. In *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948 at ¶ 166, quoting *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955), paragraph two of the syllabus, the Supreme Court of Ohio provided the four-part test to determine whether a statement is admissible as an excited utterance under Evid.R. 803(2):

> (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
>
> (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination *continued* to remain

sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and

(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

{¶ 46} Emphasis sic.

{¶ 47} Alison Lamp testified she received a phone call from Lamp from the medical pod at the jail. T. 367. The call was placed the day after Lamp was assaulted. T. 15. Alison described Lamp as "very shaken, upset, and scared and just -- shocked too, I think." T.367. Lamp told his mother he had been "jumped by two guys" and had to go to the emergency room where medical staff confirmed his arm was broken. *Id.* Lamp further told his mother appellant was one of the two men who attacked him. T. 15, 39, 366.

{¶ 48} While Lamp made this statement to his mother the day after he was attacked, "[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance." *State v. Taylor*, 66 Ohio St.3d 295, 303, 612 N.E.2d 316 (1993). Instead, "each case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation." *State v. Duncan*, 53 Ohio St.2d 215, 219-220, 373 N.E.2d at 1237 (1978).

{¶ 49} We find the trial court did not abuse its discretion in determining Lamp's statement to his mother regarding the source of his injury was an admissible excited

utterance. We first note that an assault is certainly an occurrence starling enough to produce nervous excitement and since Lamp was the victim, he was obviously in a position to personally observe the matters contained in his statements to his mother.

{¶ 50} Next, while the record indicates the call to Alison Lamp took place the day after the assault, Lamp was assaulted on March 6, 2021 later in the day. He was not transported to the hospital and seen by hospital staff until after 9:00 p.m. and was not discharged until sometime after midnight – the next day. State's exhibit 4. Thus, while there is no direct indication in the record as to the exact time of Lamp's call to his mother, circumstantial evidence supports a conclusion that the call took place soon after the assault, medical treatment, and Lamp's return to the jail where he was able to make a phone call to his mother. We find these facts sufficient to support a finding that Lamp remined under the nervous excitement of the event. Additionally, according to the testimony of Lamp's mother, Lamp's statements were unprompted by his mother. He called her upset about what happened and outlined the details of the assault including the fact that appellant was one of the two assailants.

{¶ 51} We next move to statements made by Lamp to medical professionals which the trial court admitted pursuant to Evid.R. 803(4), statements made for purposes of medical diagnosis and treatment. Appellant also does not challenge the admission of these statements.

{¶ 52} Two statements were admitted under this hearsay exception. First, Lamp told Fairfield Medical Center physician's assistant Kristen White that he was "jumped by other inmates at the jail" and was complaining of pain in his left arm as a result. T. 251-252. Second, Lamp told Fairfield County Jail nurse Erica Thompson that he had shooting

pain in his left arm after having been in a fight. T. 276-277. Neither of these statements identify a perpetrator which would be error. See *State v. Zembower*, 11th Dist. Lake No. No. 96-L-184, 1998 WL 156858, *4 citing *State v. Conway*, Lake App. Nos. 95-L-040 and 95-L-043, 1997 WL 361694 (June 20, 1997) (the name of the perpetrator of domestic violence was not reasonably pertinent to medical diagnosis and treatment when the victim was an adult.) The manner in which a patient sustained an injury, however, is reasonably relevant to diagnosis and treatment. *Id.*

{¶ 53} In conclusion, even if statements made by Lamp to the deputies were inadmissible pursuant to forfeiture by wrongdoing, those statements were cumulative to the statements Lamp made to his mother, which were admissible as excited utterances. The excited utterances mirrored the improper hearsay. Moreover, statements made by Lamp for purposes of medical diagnosis and treatment were properly admitted and also mirrored the improper hearsay. Any error in admitting the hearsay statements Lamp made to the deputies was therefore harmless as it was cumulative to properly admitted evidence.

{¶ 54} The second assignment of error is overruled.

I

{¶ 55} In his first assignment of error, appellant argues his conviction for felonious assault is against the manifest weight of the evidence. We disagree.

{¶ 56} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶ 57} We note the jury was instructed it could find appellant guilty of felonious assault if it found appellant caused or was complicit in causing Lamp's injury. T. 511. We further find the evidence against appellant was overwhelming.  Evidence demonstrated Lamp walked into appellant's cell uninjured and emerged with a broken arm. Upon conducting an audio check from the control tower to the intercom in appellant's cell deputies heard what sounded like a fight inside appellant's cell. T. 299, 300. Deputies arrived at appellant's cell to find appellant and his cellmate sweating and breathing heavily and Lamp backing out of the cell complaining of an injured arm. T. 100, 113, 133, 298, 300-302. Immediately after the incident Lamp told medical professionals he was injured in a fight which took place when he was "jumped" by two inmates. T. 250-252, 277. Video evidence was presented to the jury showing Lamp entering appellant's cell, Deputy White removing Lamp from the cell, deputies escorting Lamp back to his cell unaided and uncuffed, and Lamp entering his cell under his own power. State's exhibit 1.

{¶ 58} While appellant complains of the quality of the videos, the manner in which deputies investigated the incident, and their level of experience, these are credibility matters properly left to the jury. Appellant also alleges lack of testimony from Lamp and admission of his hearsay statements rendered his conviction against the manifest weight of the evidence. However, as addressed above, statements from Lamp were properly

admitted pursuant to Evid.R 803(2). Those statements that were improperly admitted did not differ from those that were properly admitted.

{¶ 59} This is not an exceptional case in which the evidence weighs heavily against a conviction, nor a case where the jury clearly lost its way in making its credibility determinations. Rather, the evidence against appellant was overwhelming. The first assignment of error is overruled.

### III, IV

{¶ 60} Appellant's third and fourth assignments of error are interrelated and will therefore be addressed together. Appellant's third assignment of error alleges the trial court's failure to instruct the jury on the lesser-included offense of assault was plain error. Appellant's fourth assignment of error alleges trial counsel rendered ineffective assistance by failing to request the instruction. We disagree.

{¶ 61} In *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, at ¶ 6, the Supreme Court of Ohio noted,

> The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense. *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). The second tier looks to the evidence in a particular case and determines

whether " 'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.' " *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11. Only in the second tier of the analysis do the facts of a particular case become relevant.

{¶ 62} While assault is a lesser-included offense of felonious assault, a criminal defendant is entitled to a jury instruction on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 216 (1988). Such an instruction is required only if "the trier of fact could reasonably reject an affirmative defense and could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense." *State v. Kidder*, 32 Ohio St.3d 279, 282-283, 513 N.E.2d 311.

{¶ 63} Appellant did not request that the jury be instructed on the lesser included offense of assault. A criminal defendant's failure to raise a timely objection to jury instructions waives any error made in that regard except for plain error, i.e., but for the error, the outcome of the trial clearly would have been otherwise. *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332(1983), syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest

miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 64} In light of Lamp's broken arm and the overwhelming evidence pointing to appellant as the assailant or one of the assailants, we cannot say the jury would have found appellant guilty of only assault and not also felonious assault. Appellant was therefore not entitled to an instruction for assault.

{¶ 65} Turning to appellant's ineffective assistance argument, to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 66} Because we have found appellant was not entitled to an instruction for the lesser-included offense of assault, appellant cannot demonstrate deficient performance by his trial counsel.

{¶ 67} The third and fourth assignments of error are overruled.

V

{¶ 68} In his final assignment of error, appellant argues cumulative error in the admission or exclusion of evidence deprived him of a fair trial. We disagree.

{¶ 69} In *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. The cumulative error doctrine does not apply, however, where the defendant "cannot point to 'multiple instances of harmless error.' " *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 148 quoting *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).

{¶ 70} In the instant case, we have found just one instance of harmless error. The doctrine of cumulative error is therefore inapplicable.

{¶ 71} The final assignment of error is overruled.

{¶ 72} The judgment of conviction and sentence of the Fairfield County Court of Common Pleas is affirmed.

By Wise, Earle, P.J.

Hoffman, J. and

Baldwin, J. concur.

EEW/rw