[Cite as *State v. Grate*, 2023-Ohio-2103.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | | Hon. Craig R. Baldwin, J. |
| | : | | Hon. Andrew J. King, J. |
| -vs- | : | | |
| | : | | |
| SHAWN M. GRATE, | : | | Case No. 22-COA-029 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Ashland County
                             Court of Common Pleas, Case No.
                             16-CRI-187

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            June 26, 2023

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

Ashland County Prosecutor's Office        MELISSA JACKSON
CHRISTOPHER R. TUNNELL                     Office of the Ohio Public Defender
Prosecuting Attorney                       Supervising Attorney, Death Penalty Dept.
110 Cottage Street, 3rd Floor
Ashland, Ohio 44805                        ALISON SWAIN
                                           ADAM VINCENT
By: STEPHEN E. MAHER                       Assistant State Public Defenders
Special Assistant Ashland County Prosecutor  250 East Broad Street, Suite 1400
BRENDA LEIKALA                             Columbus, Ohio 43215
Senior Assistant Attorney General
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215

*Baldwin, J.*

**{¶1}** Shawn Grate appeals the decision of the Ashland County Court of Common Pleas denying his petition for postconviction relief. The State of Ohio is appellee.

## STATEMENT OF THE FACTS AND THE CASE

**{¶2}** Grate is appealing the Ashland County Court of Common Pleas decision to deny his petition for postconviction relief. An Ashland County jury convicted Grate of two counts of aggravated murder and many related charges. The Supreme Court of Ohio reviewed the direct appeal of Grate's conviction in *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8. That Court summarized the list of the convictions in the opening paragraph:

> An Ashland County jury found appellant, Shawn Grate, guilty of the aggravated murder of E.G. and S.S. In total, Grate was convicted of 23 counts, including some related to a third victim, L.S., who survived. Both aggravated-murder counts included death-penalty specifications for a course of conduct involving multiple murders. The count charging Grate with E.G.'s murder also included an aggravated-murder-during-a-kidnapping death-penalty specification. The count charging Grate with S.S.'s murder also included a death-penalty specification for aggravated murder during a kidnapping, rape or aggravated robbery. The jury recommended sentences of death, and the trial court sentenced Grate accordingly.

*Id.* at ¶ 1.

**{¶3}** The Supreme Court of Ohio affirmed the decision of the trial court, denied Grate's Motion for Reconsideration, *State v. Grate,* 160 Ohio St.3d 1517, 2020-Ohio-

6946, 159 N.E.3d 1179, and denied his Application to Reopen, *State v. Grate*, 163 Ohio St.3d 1439, 2021-Ohio-1896, 168 N.E.3d 1195. Grate's Petition for Writ of Certiorari was also denied. *Grate v. Ohio*, 211 L.Ed.2d 51, 142 S.Ct. 143.

{¶4} Grate filed a petition for postconviction relief with the trial court, citing thirty-seven grounds for relief. The trial court denied the petition and Grate brought this appeal.

{¶5} The Supreme Court of Ohio composed a thorough review of the facts and the case which we will not repeat in this opinion as a comprehensive review of the facts is unnecessary for the resolution of Grate's appeal. Reference to the record will be included within our analysis as necessary.

{¶6} Grate filed his initial Petition for Postconviction Relief on February 6, 2020, followed by the First Amended Petition on April 29, 2021 and the Second Amended Petition on January 21, 2022. The State filed a motion for summary judgment on March 28, 2022 and Grate opposed the motion. Both parties submitted proposed findings of fact and conclusions of law.

{¶7} The trial court denied Grate's petition for postconviction relief on July 19, 2022 and adopted the state's Findings of Fact and Conclusions of Law as its own. Grate filed his notice of appeal on August 19, 2022 and submitted thirteen assignments of error:

{¶8} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GRATE INDEPENDENT, DELIBERATIVE REVIEW IN VIOLATION OF HIS DUE PROCESS RIGHTS AND IN VIOLATION OF THE REQUIREMENTS OF R.C. 2953.21."

{¶9} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT APPLIED THE DOCTRINE OF RES JUDICATA TO BAR GRATE'S GROUNDS FOR RELIEF."

{¶10} "III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GRATE'S CLAIM THAT OHIO'S DEATH PENALTY IS UNCONSTITIONAL(sic) BECAUSE IT ALLOWS FOR THE EXECUTION OF PERSONS WHO SUFFER FROM SERIOUS MENTAL ILLNESSES."

{¶11} "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GRATE'S CLAIM THAT HE WAS DENIED HIS RIGHT TO COUNSEL DURING THE MITIGATION PHASE OF HIS CAPITAL TRIAL, AND DENIED HIM AN EVIDENTIARY HEARING."

{¶12} "V. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GRATE'S CLAIMS THAT HIS TRIAL COUNSEL RENDERED CONSTITUTIONALLY DEFICIENT PERFORMANCE IN THE MITIGATION PHASE OF HIS CAPITAL TRIAL AND DENIED HIM AN EVIDENTIARY HEARING."

{¶13} "VI. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GRATE'S CLAIMS THAT THE TRIAL COURT SHOULD HAVE GRANTED HIM A CHANGE IN VENUE DUE TO PREJUDICIAL PRETRIAL PUBLICITY."

{¶14} "VII. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GRATE'S CLAIMS THAT HIS THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT INDIVIDUAL VOIR DIRE ON ALL TOPICS."

{¶15} "VIII. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING GRATE RELIEF ON THE GROUNDS THAT HIS DUE PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT FAILED TO FOLLOW OHIO SENTENCING LAW."

**{¶16}** "IX. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GRATE'S CLAIM THAT OHIO'S FELONY MURDER CAPITAL SPECIFICATION IS UNCONSTITUTIONAL."

**{¶17}** "X. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GRATE'S CLAIMS THAT OHIO'S POST-CONVICTION PROCEDURES ARE CONSTITUTIONALLY INADEQUATE."

**{¶18}** "XI. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED GRATE DUE PROCESS WHEN IT DENIED GRATE'S CLAIM THAT OHIO'S DEATH PENALTY STATUTE IS UNCONSTITUTIONAL."

**{¶19}** "XII. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING GRATE RELIEF ON THE CLAIMS THAT LETHAL INJECTION AS ADMINISTERED IN THE STATE OF OHIO VIOLATES THE UNITED STATES AND OHIO CONSTITUTIONS."

**{¶20}** "XIII. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GRATE'S CLAIM THAT HE WAS PREJUDICED BY THE CUMULATIVE ERRORS THAT OCCURRED AT HIS CAPITAL TRIAL, WITHOUT ALLOWING FOR AN EVIDENTIARY HEARING."

## STANDARD OF REVIEW

**{¶21}** Postconviction petitions for relief are authorized by the Ohio Revised Code:

(A)(1)(a) A person in any of the following categories may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief:

(i)      Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States;

(ii)     Any person who has been convicted of a criminal offense and sentenced to death and who claims that there was a denial or infringement of the person's rights under either of those Constitutions that creates a reasonable probability of an altered verdict;

(iii)    Any person who has been convicted of a criminal offense that is a felony and who is an offender for whom DNA testing that was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the person's case as described in division (D) of section 2953.74 of the Revised Code provided results that establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death;

(iv)     Any person who has been convicted of aggravated murder and sentenced to death for the offense and who claims that the person had a serious mental illness at the time of the commission of the offense and

that as a result the court should render void the sentence of death, with the filing of the petition constituting the waiver described in division (A)(3)(b) of this section.

(v)    (b) A petitioner under division (A)(1)(a) of this section may file a supporting affidavit and other documentary evidence in support of the claim for relief.

R.C. 2953.21(A)(1)(a)-(b)[1].

**{¶22}** A petition for postconviction relief is a means to reach constitutional issues that would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. *State v. Murphy,* 10th Dist. Franklin No. 00AP-233, 2000 WL 1877526 (Dec. 26, 2000); *Accord, State v. Zich*, 6th Dist. Lucas No. L-15-1263, 2017-Ohio-414, ¶ 9. Although designed to address claimed constitutional violations, the postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. *State v. Calhoun,* 86 Ohio St.3d 279, 281, 714 N.E.2d 905(1999); *State v. Steffen,* 70 Ohio St.3d 399, 410, 639 N.E.2d 67(1994). A petition for postconviction relief, thus, does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819(1980). *State v. Lewis*, 5th Dist. Stark No. 2007CA00358, 2008-Ohio-3113 at ¶ 8.

---

[1] Revised Code 2953.21 was amended after Grate filed his initial petition, but before the court considered the petitions. We have reviewed both versions and conclude the amendment did not create any material changes that would impact our analysis.

{¶23} A trial court has a gatekeeping role as to whether a defendant will receive a hearing in postconviction cases. The Supreme Court of Ohio has held that a trial court could dismiss a petition for postconviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905(1999), paragraph two of the syllabus.

{¶24} The Ninth District noted that "evidence outside the record alone will not guarantee the right to an evidentiary hearing. *State v. Combs* (1994), 100 Ohio App.3d 90, 97, 652 N.E.2d 205. Such evidence 'must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of [*State v. Perry* (1967), 10 Ohio St.2d 175] by simply attaching as exhibits evidence which is only marginally significant

* * *.' [T]he evidence must not be merely cumulative of or alternative to evidence presented at trial. *Combs, supra* at 98." *State v. Phillips,* Ninth District, Summit No. 20692, 2002–Ohio–823, *3.

{¶25} "[A] trial court's decision granting or denying a post-conviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for post-conviction relief that is supported by competent and credible evidence." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77(2006), ¶ 58.

{¶26} An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence.

*Tennant v. Gallick*, 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶ 35; *In re Guardianship of S.H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi*, 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶ 54.

**{¶27}** The doctrine of res judicata bars a party from raising a claim that could have been raised and litigated in a prior proceeding. *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). This doctrine is applicable in postconviction proceedings, but the Supreme Court of Ohio has cautioned that we apply it with care in cases alleging ineffective assistance of counsel.

### RES JUDICATA

**{¶28}** The doctrine of res judicata plays a central role in the resolution of this appeal warranting our consideration of the doctrine generally and in the context of a petition for postconviction relief, prior to analysis of the assignments of error.

**{¶29}** The doctrine of res judicata bars a party from raising a claim that was raised and litigated in a prior proceeding or could have been raised and litigated in that prior proceeding. *Perry*, *supra* at 180. In *State v. Blanton,* Slip Opinion No. 2022-Ohio-398 the Supreme Court of Ohio confirmed that the doctrine applies to postconviction proceedings, but that the nature of the claim made by the petitioner can require a different analysis and outcome, particularly in the context of a claim of ineffective assistance of counsel.

**{¶30}** If a claim could have been presented at trial and raised on direct appeal, the doctrine of res judicata would bar its use in the context of a petition for postconviction relief. That general rule is subject to a potential exception if the postconviction petition presents a claim based upon ineffective assistance of counsel. In such a claim, if the petitioner's appellate counsel is different from his trial counsel and the matter could have

been subject to appeal on the record, res judicata will bar that postconviction claim for relief. A different outcome results if the petitioner had the same attorney at trial and on appeal or he must rely on evidence outside the trial record to establish his claim for relief. *State v. Cole*, 2 Ohio St.3d 112, 113-114, 443 N.E.2d 169 (1982). In that circumstance, res judicata does not serve to bar a claim of ineffective assistance of counsel in a postconviction petition.

{¶31} A claim of ineffective assistance of counsel often cannot be presented to the trial court as the effectiveness of counsel is not evident until the conclusion of the trial and it may not be part of a direct appeal as the relevant evidence was not made part of the record potentially as a consequence of counsel's ineffective representation. "* * * [T]he very premise of this sort of ineffective-assistance claim is that counsel erred by failing to present exculpatory evidence that was available to him. When the trial record does not demonstrate the existence of such evidence, a defendant would not have been able to raise such a claim on direct appeal." *Blanton, supra* at ¶60.

{¶32} Generally, res judicata will not bar a claim of ineffective assistance of counsel if it is based upon evidence dehors the record. *Id.* at 114. Overcoming the bar of res judicata with evidence outside the record does not automatically entitle the petitioner to a hearing unless petitioner proffers "evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the [petitioner]." *Id.* The *Blanton* Court described the opinion in *Cole* as establishing "a two-part inquiry to determine whether a petitioner who brings forth evidence outside the record of ineffective assistance of counsel is entitled to a hearing." First, "Has the petitioner introduced

competent evidence of ineffective assistance that was not included in the trial record?"

And then "* * * does that evidence present substantive grounds for relief; that is, if

believed, would the newly presented evidence—together with any evidence in the trial

record—establish that counsel was ineffective?" *Blanton, supra* at |P33.

**{¶33}** This exception applies only to claims of ineffective assistance of counsel.

The general rule of res judicata applies to bar a postconviction claim when the claim is

based upon evidence that was available to the defense at the time of trial. *State v. Cole*,

2 Ohio St.3d 112, 443 N.E.2d 169 (1982), syllabus*; State v. Adams*, 11th Dist. Trumbull

No. 2003-T-0064, 2005-Ohio-348, ¶ 39.

**ANALYSIS**

**I.**

**{¶34}** Grate's First Assignment of Error, that the trial court abused its discretion

when it denied Grate independent, deliberative review in violation of his due process

rights and in violation of the requirements of R.C. 2953.21 is misleading in that it promises

evidence that the trial court failed to fulfill a principal duty of all judges, but fails to deliver

any such evidence. Instead, Grate argues that the trial court improperly incorporated by

reference the proposed findings of fact and conclusions of law submitted by the State and

that such an act is prohibited by the decisions cited in his brief.

**{¶35}** The cases cited by Grate are critical of trial courts that adopt a party's

findings of fact as its own, but none prohibit it. Grate relies on *United States v. El Paso

Nat. Gas Co.*, 376 U.S. 651, 12 L.Ed.2d 12, 84 S.Ct. 1044, 1047 (1964) but omits that

court's statement that the judge requested findings of fact and conclusions of law from

the prevailing party and they complied, "submitting 130 findings of fact and one conclusion

of law, all of which, we are advised, the District Court adopted verbatim. Those findings, though not the product of the workings of the district judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence." *Id.* at 656. Grate accurately cites the comments from *State v. Bunch,* 2022-Ohio-4723, reconsideration denied, 169 Ohio St.3d 1445, 2023-Ohio-554, 203 N.E.3d 745, but the language relied upon is relegated to a footnote and is no part of the holding of the court in that case. And the case cited within that footnote, *Jefferson v. Upton*, 560 U.S. 284, 176 L.Ed.2d 1032, 130 S.Ct. 2217, notes that while it " * * * stated that a court's 'verbatim adoption of findings of fact prepared by prevailing parties' should be * * * treated as findings of the court," it is critical of the findings of fact in the matter before it because "those findings were drafted exclusively by the attorneys for the State pursuant to an ex parte request from the state-court judge, who made no such request of Jefferson, failed to notify Jefferson of the request made to opposing counsel, and adopted the State's proposed opinion verbatim even though it recounted evidence from a nonexistent witness." *Id.* at 292, 293-294. In the case before us, the trial court requested both parties submit findings of fact, each party was aware of the request, and there are no references to nonexistent witnesses.

{¶36} Grate complains of the content and quality of the findings of fact and conclusions of law in this Assignment of Error, but his focus is upon the trial court's adoption of the State's findings of fact and conclusions of law. He asks that we consider such an act a "failure to file any findings of fact and conclusions of law" as required by R.C. 2953.21, but has provided no reliable authority for such a decision and does not argue in this assignment that the findings are unsupported by the evidence. While such

a practice has been subject to criticism, it is not prohibited and cannot serve as a violation of the trial court's obligations under R.C. 2953.21. Any other conclusion would compel courts of appeal to determine what a trial court may or may not adopt from the proposed findings of fact and whether the trial court's findings were sufficiently distinct from the proposed findings to satisfy an as yet undefined standard.

{¶37} We find the Findings of Fact and Conclusions of Law fulfill the applicable requirements. The First Assignment of Error is denied.

## II.

{¶38} Grate claims the trial court abused its discretion when it applied the doctrine of res judicata to bar his claims for relief in his Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Thirty-Seventh Grounds for Relief.

{¶39} Res judicata does apply to postconviction relief proceedings, barring "a claim that could have been raised in litigated in a prior proceeding." *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967) as cited in *State v. Blanton*, Slip Opinion No. 2022-Ohio-398 ¶2. Generally, a court reviewing a postconviction relief petition may not consider a claim that could have been presented at trial and raised on direct appeal, but that does not end the analysis. The Supreme Court of Ohio has held that "res judicata does not bar a postconviction ineffective-assistance-of-counsel claim when either (1) the petitioner had the same attorney at trial and on appeal or (2) he must rely on evidence outside the record to establish his claim for relief." *Blanton, supra* at ¶ 2. If the postconviction claim concerns matters outside a claim of ineffective assistance of counsel, the "[e]vidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of [State v.]

Perry[10 Ohio St.2d 175, 226 N.E.2d 104 (1967) ] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *State v. Weaver*, 5th Dist. No. CT2017-0075, 2018-Ohio-2509, 114 N.E.3d 766, ¶ 26. "Thus, the evidence must not be merely cumulative of or alternative to evidence presented at trial." (Citation omitted.) *State v. Elmore*, 5th Dist. Licking No. 2005-CA-32, 2005-Ohio-5940, ¶ 23.

**{¶40}** Grate did not have the same attorney at trial and on appeal and focuses upon evidence outside the record to establish his claim. *Blanton* tells us that even if there is evidence dehors the record that bars the application of the doctrine of res judicata, that is not the end of the analysis. The petitioner must also establish that the ineffective counsel substantially violated its essential duties to the petitioner and that the violation was prejudicial to the petitioner. *Blanton, supra* at ¶ 31 referencing *Cole, supra* at 114; *See State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905, 914 (1999) (First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.)

**{¶41}** Grate argues that his defense counsel was obligated to present the hundreds of articles he submitted with his petition to the trial court and move for a change of venue and his failure to do so constituted ineffective assistance.

A trial court can change venue "when it appears that a fair and impartial trial cannot be held" in that court. Crim.R. 18; R.C. 2901.12(K).

However, " '[a] change of venue rests largely in the discretion of the trial

court, and * * * appellate courts should not disturb the trial court's [venue]

ruling * * * unless it is clearly shown that the trial court has abused its

discretion.' " *State v. Maurer* (1984), 15 Ohio St.3d 239, 250, 15 OBR 379,

388–389, 473 N.E.2d 768, 780, quoting *State v. Fairbanks* (1972), 32 Ohio

St.2d 34, 37, 61 O.O.2d 241, 243, 289 N.E.2d 352, 355. " '[A] careful and

searching voir **314 dire provides the best test of whether prejudicial pretrial

publicity has prevented obtaining a fair and impartial jury from the locality.'

" (Citations omitted.)

*State v. Lundgren, 73 Ohio St.3d 474, 479, 653 N.E.2d 304(1995).*

**{¶42}** The trial court and the parties were aware of the publicity generated by this

case. The parties jointly petitioned the court for gag order in the earlier stages of the case

and the trial court took steps to expose bias and prejudice during jury selection.

**{¶43}** The trial court in this case, similar to the trial court in *Lundgren* "selected a

jury following an extensive * * * voir dire which included individualized questioning as to

the impact of pretrial publicity. The trial court readily excused those in the venire who had

formed fixed opinions or were otherwise unsuitable." * * * Those who said they held views

expressed tentative impressions and all of the jurors selected promised to set aside any

information received or views held and decide the case only on the evidence offered at

trial." *State v. Lundgren,* 73 Ohio St.3d 474, 480, 653 N.E.2d 304 (1995). The efforts to

seat the jury in this case were summarized by the Supreme Court of Ohio:

* * *The trial court called more than 400 prospective jurors and asked them

to complete a detailed questionnaire. Voir dire then proceeded in two

stages. First, the trial court and counsel questioned jurors about their exposure to pretrial publicity. Second, the jurors who had not yet been excused were individually questioned about their views on the death penalty and any further pretrial publicity to which they may have been exposed.

After the trial court and counsel identified 48 qualified prospective jurors during individual voir dire, the trial court asked counsel, "Is there any need to continue this process tomorrow?" The parties indicated that there was no need to continue. Thereafter, 12 jurors and 5 alternates were empaneled.

Most of those seated jurors had heard or read something about the facts of the case. But each seated juror affirmed that he or she could set that information aside and decide the case solely on the evidence presented in court.

*Grate*, *supra* at ¶¶ 51-53.

**{¶44}** The Supreme Court of Ohio also considered Grate's complaints regarding individual jurors and found no basis to criticize the trial court or defense counsel. *Grate*, *supra* at ¶¶ 58-60.

**{¶45}** Grate cites decisions in which the courts found that the pretrial publicity was so pervasive that it was unnecessary to investigate whether the jury was prejudiced or bias because the extent of the publicity created a presumption of bias. Reliance on these cases is misplaced because the Supreme Court of Ohio has reviewed the efforts of the trial court and rejected the proposition that a change of venue was necessary, and because the cases are factually distinct.

**{¶46}** The publicity in this case was not analogous to the publicity in cases where the reviewing court found a presumption of bias, such as *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) where the defendant's uncounseled confession was videotaped and broadcast on television. Nor does that record show "a 'carnival atmosphere' pervaded the trial." *Sheppard v. Maxwell,* 384 U.S. 333, 358, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) as quoted in *Skilling v. United States*, 561 U.S. 358, 380, 177 L.Ed.2d 619, 130 S.Ct. 2896. This is not a case where "the 'pattern of deep and bitter prejudice' shown to be present throughout the community, * * *, was clearly reflected in the sum total of the voir dire examination of a majority of the jurors finally placed in the jury box * * * " because "[t]wo-thirds of the jurors had an opinion that petitioner was guilty and were familiar with the material facts and circumstances involved, including the fact that other murders were attributed to him, some going so far as to say that it would take evidence to overcome their belief." *Irvin v. Dowd*, 366 U.S. 717, 727–28, 6 L.Ed.2d 751, 81 S.Ct. 1639, 1645 (1961). Grate does not allege that in this case that any juror said "he 'could not * * * give the defendant the benefit of the doubt that he is innocent' '' or that "he had a 'somewhat' certain fixed opinion as to petitioner's guilt." *Id.* at 728.

**{¶47}** This case does not present facts that would lead to a presumption that no fair trial could occur due to pretrial publicity. Further, "a change of venue is not automatically granted when there is pretrial publicity. Any decision to change venue rests largely within the discretion of the trial judge." *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 49. And a "defendant claiming that pretrial publicity has denied him a fair trial must show that one or more jurors were actually biased." (Citations omitted.) *Grate, supra* at ¶ 55. While the new evidence may provide grounds for avoiding

the doctrine of res judicata, "we still must consider whether the evidence, if believed, establishes a substantive ground for relief. *Blanton*, *supra* at ¶ 74. We find that the evidence offered does not fulfill that requirement.

**{¶48}** Other defense counsel may have decided to seek a change of venue under the facts of this case, but "[c]ounsel may have reasonably decided as a matter of trial strategy to conduct the trial in [Ashland] County." *See State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 234; *State v. Bryan,* 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 156, quoting *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932 (1988) ("reviewing court 'will not second-guess trial strategy decisions' ")." *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616 ¶ 401. Defense counsel's decision on whether to seek a change of venue is considered mostly a matter of trial strategy. *State v. Bryan,* 101 Ohio St.3d 272, 2004–Ohio–971, ¶ 156 as quoted in *State v. Adams,* 7th Dist. Mahoning No. 08 MA 246, 2011-Ohio-5361, ¶ 201 aff'd in part, vacated in part, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 201. The record reflects that the parties recognized the specter of pretrial publicity and engaged in "a careful and searching voir dire" to test "whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality.' " *Lundgren, supra* at 479. We will not second guess trial counsel's evaluation of the voir dire and the decision to not seek a change of venue.

**{¶49}** Grate concludes this Assignment of Error with the statements "Grate also supported his Second through Ninth, and Eleventh Grounds for Relief with evidence that was outside the record" and "The trial court abused its discretion when it denied Grate an evidentiary hearing, and/or sentencing relief, on the Second, Third, Fourth, Fifth, Sixth,

Seventh, Eighth, Ninth, Tenth, Eleventh, and Thirty-Seventh Grounds for Relief in his Post-Conviction Petition and Amendments" (Appellant's Brief, p. 35-36). We find these conclusory statements provide no argument and we will not construct such arguments for Grate. (Citations omitted.) *Camp v. Star Leasing Co.*, 10th Dist. Franklin No. 11AP-977, 2012-Ohio-3650, ¶ 67

**{¶50}** Grate's Second Assignment of Error is denied.

### III.

**{¶51}** In his Third Assignment of Error, Grate contends that the trial court abused its discretion when it denied his claim that Ohio's death penalty is unconstitutional because it allows for the execution of persons who suffer from serious mental illnesses. The trial court found that this claim is "not founded on evidence but rather [is a] legal theory" which had not "found favor with any court" and that "claims of unconstitutionality of the death penalty could have been raised on direct appeal" but were not and are therefore barred by the doctrine of res judicata. (Findings of Fact and Conclusions of Law, July 19, 2022, p. 2).

**{¶52}** Grate does not allege ineffective assistance of counsel in this Assignment of Error and he concedes that he has not been diagnosed with a "serious mental illness" as defined in R.C. 2929.025(E)(2) so he will not be made ineligible for the death sentence under that section of the Code. We note that Grate did address his mental health in his appeal to the Supreme Court of Ohio in the context of the Not Guilty By Reason of Insanity Plea and the Court found that "The record contains a comprehensive evaluation finding Grate *23 legally sane and does not contain evidence that at the time of the offenses,

Grate was suffering from a severe mental disease or defect that prevented him from knowing the wrongfulness of his acts." *Grate, supra* at ¶79.

**{¶53}** We find that Grate is making an argument which could have been presented to the trial court, then resolved in his direct appeal and is now barred by res judicata.

**{¶54}** The Third Assignment of Error is denied.

**IV.**

**{¶55}** Grate's Fourth Assignment of Error asserts that the trial court abused its discretion when it denied his claim that he was denied his right to counsel during the mitigation phase of its capital trial and denied him an evidentiary hearing on the issue. Appellee claims that Grate's reliance on the case of *United States v. Cronic*, 466 U.S. 648, 657–58, 80 L.Ed.2d 657, 104 S.Ct. 2039, 2046 (1984) is inappropriate as that case is factually distinguishable from the case before us.

**{¶56}** First, we must note that neither the parties nor the trial court addressed the issue of res judicata as applied to this claim. We have considered Grate's argument and find that all of his criticisms of trial counsel are based upon evidence in the record that "could have been presented at trial and raised on direct appeal." *Blanton, supra* at ¶ 2. Grate presented exhibits outside the record in support of this argument, but that evidence contains criticism of the experts retained by defense counsel, and is not directly critical of defense counsel. The core of the argument, that defense counsel was so inadequate that it should be presumed that Grate was denied any counsel, is based upon material in the record. We find that this argument could have been made upon direct appeal and therefor is barred by res judicata.

**{¶57}** Even if we were to consider the merits, we would conclude that the trial court did not abuse its discretion by denying the claim. Grate's counsel retained experts, including a well-known mitigation expert, to investigate his background and prepare mitigation material. The trial court engaged in a lengthy analysis of that investigation, but Grate rejects it as inadequate and equivalent to being without counsel relying on citations to *Cronic*, *supra*.

**{¶58}** The court in *Cronic* was concerned with an "actual breakdown of the adversarial process during *658 the trial of this case" and cited as an example *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) where "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a *660 fully competent one, could [have provided] effective assistance is so small that a presumption of prejudice [was] appropriate without inquiry into the actual conduct of the trial." *Cronic*, *supra* at 657, 659-660. In *Powell,* Defendants were charged with a capital offense and counsel was appointed on the day of trial, over his objection. Counsel had appeared on behalf of persons interested in defendants, but declined to be appointed. The trial court ordered that he represent the defendants and the trial proceeded. The Supreme Court held that "such designation of counsel as was attempted was either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard." *Powell, supra* at 53. An examination of actions of counsel was found unnecessary because "under these circumstances the likelihood that counsel could have performed as an effective adversary was so remote *661 as to have made the trial inherently unfair" and "the surrounding circumstances made it so unlikely that any lawyer

could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial." *Cronic,* 660–61.

**{¶59}** Grates does not describe facts that are as egregious as the facts in *Powell* but instead offers criticism suggesting that trial counsel was either insufficiently aggressive or ineffective as demonstrated by the record or that the expert retained by counsel committed serious errors. We find that these criticisms arise from the facts in the record and that, even if the doctrine of res judicata is set aside and all the facts are assumed as true and the merits are considered, Grate has failed to demonstrate a substantive claim for relief and the trial court did not abuse its discretion by denying this claim.

**{¶60}** The Fourth Assignment of Error is denied.

**V.**

**{¶61}** In his Fifth Assignment of Error, Grate claims the trial court abused its discretion when it denied his claim that his trial counsel rendered constitutionally deficient performance of the mitigation phase of his capital trial and denied him an evidentiary hearing. Grate argues that "The trial court abused its discretion in relying on the trial court record to assess the adequacy of counsel's performance. Grate has sufficiently raised the issue, supported by evidence outside the trial record, as to " 'whether [](sic) trial counsel's decisions were in fact deliberate and strategic and whether strategic decisions were reasonable ones.' *See Bunch,* ℙ 36." (Appellate Brief, p. 49).

**{¶62}** Grate combines citations from the record with evidence submitted with his petition for postconviction relief in support of this Assignment of Error. The evidence dehors the record upon which Grate relies is comprised of expert reports and affidavits

critical of the experts retained by trial counsel. Those experts offered opinions regarding the errors of their colleague, but have not been critical of trial counsel. Grate has not offered the affidavit of another qualified attorney criticizing trial counsel which may have provided better insight into the allegation of ineffective assistance than criticism of the expert's actions. *See State v. Argueta,* 5th Dist. Licking No. 2005CA00071, 2006-Ohio-4581, ¶¶ 49-53.

**{¶63}** "A defendant is entitled to effective assistance of counsel, not effective assistance of experts." *Davie v. Mitchell*, 291 F.Supp.2d 573, 616, *aff'd,* 547 F.3d 297. There is no merit to Grate's contention that his counsel failed to provide constitutionally adequate assistance because the experts they called to testify failed themselves to provide adequate expert assistance. *Id. See also State v. Leonard,* 1st Dist. No. C-030492, 157 Ohio App.3d 653, 2004-Ohio-3323, 813 N.E.2d 50, ¶ 23 (* * * the decision in Ake cannot reasonably be read to recognize a constitutionally based right to the effective assistance of an appointed mental-health expert, independent of the constitutional right to the effective assistance of counsel).

**{¶64}** Further, trial counsel is not obligated to evaluate the quality of the selected expert's opinion or engage in his own expert analysis. "An attorney is not required to be so(sic) expert in psychiatry." *Pruett v. Thompson*, 996 F.2d 1560, 1574 (4th Cir.1993). In the matter before us, Grate selected experts who were qualified to testify and did so at the trial. The parties appear to agree that the mitigation expert was of superior quality and reputation. The psychological expert was qualified and authorized by the trial court to testify, but Grate now attacks him as ineffective and holds trial counsel responsible for that outcome. While Grate provides evidence from other experts that critique the expert

used at trial, the evidence offered does not support a conclusion that Grate's trial counsel erred by choosing this expert or presenting his opinions. Grate does reference errors in the examination of Grate, the performance of brain scans and the presentation of the evidence, but those issues are part of the record and, as noted above, supply limited support, if any, for a postconviction petition. For example, appellants contention that "[a]ny competent capital defense counsel who saw this information in Dr. Fabian's report, would have been alerted to his incompetent performance, and most certainly would not have handed over the irrelevant and inflammatory information to the State" (Appellant's Brief, p. 71) raises an issue that was ripe for consideration on direct appeal and cannot now be used to buttress a petition for postconviction relief.

{¶65} In the context of the expert opinion, Grate is critical of trial counsel's actions, but those actions are not part of the evidence outside the record. Grate claims that trial counsel erroneously provided the state with a mitigation report that contained details that should not have been disclosed to the state, for example. Grate provides clear references to the record for these alleged lapses of judgment by trial counsel, none of which involve imposing a duty on trial counsel to evaluate the competency of the trial expert, but instead involve decisions made as a part of trial strategy. These criticisms are part of the record, were available to support a direct appeal and have limited use in evaluating Grate's postconviction petition.

{¶66} Grate also contends that his counsel erred by not presenting additional mitigation witnesses, namely, family members. "The defense decision to call or not call a mitigation witness is a matter of trial strategy. * * * Debatable trial tactics generally do not constitute ineffective assistance of counsel." *State v. Elmore,* 111 Ohio St.3d 515, 2006-

Ohio-6207, 857 N.E.2d 547, ¶ 116. In this case the record demonstrates that the mitigation expert invested significant time attempting to locate and speak with family members and other mitigation witnesses. The trial court reviewed the record and found: "Where Crate's billings show aggressive and ongoing efforts to obtain family cooperation that commenced at least by August 1, 2017, the record confirms that the lack of cooperation of Grate's family was not due to lack of effort on part of mitigation specialist Jim Crates. Rather, Grate's family stayed out of it despite the herculean efforts of mitigation specialist Jim Crates to get them involved." (Findings of Fact and Conclusions of Law, p. 42). The apparent postconviction change of heart of the witnesses does not transform competent efforts to gather information into ineffective assistance of counsel.

**{¶67}** Grate next cites the lack of request for a jury instruction on the mitigating facts described in R.C. 2929.04. As this issue is contained within the record, Grate had the opportunity to present an argument in a direct appeal, either as error or as plain error, *State v. Paskins,* 5th Dist. No. 2021 CA 00032, 2022-Ohio-3810, 199 N.E.3d 680 and by failing to do so the issue is now barred by the doctrine of res judicata. Grate repeats his criticism of the trial expert in this context, but we have disposed of that issue above. Defense counsel is obligated to retain a qualified expert, but cannot be expected to evaluate that expert's opinion.

**{¶68}** The Fifth Assignment of Error is denied.

### VI.

**{¶69}** In his Sixth Assignment of Error, Grate claims the trial court abused its discretion when it denied his claims that the trial court should have granted him a change in venue due to prejudicial pretrial publicity. While the text of Grate's Assignment of Error

is limited to a criticism of trial court, his argument includes assertions that trial counsel was ineffective for his failure to request a change of venue. In support of this Assignment of Error, Grates directs our attention to the volume of articles from the media regarding this incident and description of the alleged impact on the jury panel.

{¶70} Grate did argue before the Supreme Court of Ohio that his trial counsel was ineffective for failing to request a change of venue and that Court reviewed the record to consider whether it demonstrated that that any of the jurors suffered from bias or preconceived notions of guilt. *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶¶ 48-70. The trial court rejected Grate's assertion after reviewing the record and considering Grate's assertion that individual jurors were biased. The Court concluded "* * * Grate cannot establish that he was prejudiced as a result of the trial occurring in Ashland County." *Id.* at ¶54. We find that this holding would apply equally to the new allegation that the trial court failed to sua sponte order a change of venue based upon the Supreme Court's analysis and our consideration of pretrial publicity in the context of our analysis of the Second Assignment of Error.

{¶71} Grate insists that the additional evidence of the articles presented to the trial court with his postconviction motion creates a substantive claim that prejudice should be presumed. He argues that the Supreme Court of Ohio did not have that evidence before it, so it was not able to consider the breadth of the publicity that impacted the trial. Grate cites to the comments of the jurors during voir dire to demonstrate the impact of the pretrial publicity. Grate's reliance on the testimony of the jurors undermines his contention that his claim is not barred by res judicata and that the evidence is cogent. The Supreme Court of Ohio analyzed the procedures the trial court and counsel used to weed out

prejudice or bias and concluded that the defense counsel was not ineffective. The Supreme Court's analysis inexorably leads to the same conclusion in the context of the duty of the trial court to sua sponte change venue. An examination of the record reveals no evidence of prejudice that produced an unfair trial.

**{¶72}** Grate relies upon the decision in *Sheppard v. Maxwell,* 384 U.S. 333, 16 L.Ed.2d 600, 86 S.Ct. 1507, 1516 (1966) where the court found a "carnival atmosphere" existed at trial such that it was unnecessary to show identifiable prejudice to the accused. *Id.* at 352, 358. The *Sheppard* Court did not engage in an analysis of the attempt to protect the jury from bias or prejudicial information as it concluded that the pretrial publicity was so pervasive that such a review was unnecessary. As an example, the Supreme Court referenced at incident where: "Charges and countercharges were aired in the news media besides those for which Sheppard was called to trial. In addition, only three months before trial, Sheppard was examined for more than five hours without counsel during a three-day inquest which ended in a public brawl. The inquest was televised live from a high school gymnasium seating hundreds of people." *Sheppard v. Maxwell,* 384 U.S. 333, 354, 16 L.Ed.2d 600, 86 S.Ct. 1507, 1518 (1966). The Supreme Court also noted "that bedlam reigned at the courthouse during the trial and newsman took over practically the entire courtroom, hounding most of the participants in the trial, especially Sheppard. *Id.* at 355."

**{¶73}** The charges against Grate did attract significant media attention but the response was not at the level found in the *Sheppard* case. The *Sheppard* court found no review of the jury selection necessary due to the "carnival atmosphere" but the Supreme Court of Ohio did a complete analysis of the efforts to protect the jury and complete voir dire in this case and noted that "pretrial publicity—even pervasive, adverse publicity—

'does not inevitably lead to an unfair trial.' *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). [T]he best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality" is "a careful and searching voir dire." *Grate, supra* at ₱ 50. The court reviewed the procedures used by the court and counsel to expose bias and prejudice and concluded that "* * * Grate cannot establish that he was prejudiced as a result of the trial occurring in Ashland County. *Grate*, *supra* at ₱ 54.

{¶74} The Supreme Court reviewed the steps taken by the court and counsel and also noted that, with regard to allegations of bias on the part of specific jurors, those jurors "assured the court that they could set aside what they had heard and decide the case based on the evidence presented in court. The trial court was in the best position to judge each juror's demeanor and ability to be fair and decide whether to credit the juror's assurance that he or she would set aside any prior knowledge and preconceived notions of guilt." *Id.* at 59.

{¶75} The analysis completed by the Supreme Court of Ohio ultimately undermines Grate's ability to show that "pretrial publicity was so pervasive and prejudicial in an attempt to see the jury would be a vain act" because the court analyzed the record and determined there was no basis upon which to fault counsel for failing to seek a change of venue as there was insufficient evidence of any prejudicial impact on the jury regardless of the fact that the record did not contain the additional articles submitted by Grate with his petition for postconviction relief. *Id.* at ₱55. The materials submitted by Grate do not meet a threshold standard of cogency and are "merely cumulative of or

alternative to evidence presented at trial and upon appeal." *State v. Elmore*, 5th Dist. Licking No. 2005-CA-32, 2005-Ohio-5940, ¶ 23.

**{¶76}** The Sixth Assignment of Error is denied.

**VII.**

**{¶77}** In his Seventh Assignment of Error, Grate asserts the trial court abused its discretion when it denied his claim that the trial court erred when it failed to grant individual voir dire on all topics. He notes that both trial counsel and the state supported a motion for a gag order and that motion was granted but, when trial counsel filed a motion for individual and sequestered voir dire, the motion was granted in part, for the death qualification phase of the trial only.

**{¶78}** The trial court denied this claim because "Grate does not explain how the 500-page stack of stories in Exhibit 37 and Exhibit 38 shows error by the trial court in not requiring all voir dire to be conducted individually." (Findings of Fact and Conclusions of Law, p. 290). Grate's reference to these exhibits is only incidental to his argument that jurors were biased as a result of the publicity. Grate's focus is on the comments of the jurors during voir dire, who disclosed their knowledge of the case based upon media releases and any preconceived notions they may have held. All of this information was contained within the record and, therefore, could have served as a basis for direct appeal. The additional media records add nothing cogent to Grate's claim as he focuses upon the impact on the jurors and not the volume of the media coverage. Grate had the opportunity to file a direct appeal citing those same quotes from the voir dire as he does in his brief before us in this case. Because he chose not to do so, this claim is now barred by the doctrine of res judicata and the trial court did not abuse its discretion in rejecting it.

**{¶79}** The Seventh Assignment of Error is denied.

**VIII.**

**{¶80}** In his Eighth Assignment of Error Grate claims the trial court abused its discretion when it denied relief on the grounds that his due process rights were violated when the trial court failed to follow Ohio sentencing law. Grate argues that "nowhere in its June 1, 2018, sentencing opinion did the trial court mention or weigh the factors and requirements of R. C. 2929.11, as required by law. *See* R. C. 2929.11. The trial court simply weighed the aggravating and mitigating factors as required by R. C. 2929.04." (Appellant's Brief, p. 87). Grate further claims that: "In his post-conviction petition, Grate presented evidence dehors the record demonstrating that the death penalty is not the "minimum sanction" that would accomplish the purposes of R.C. 2929.11. PC Ex. 19, 20, 21, 22, 23, 24. Sentencing Grate to death places an unnecessary burden on state and local resources and ignores that a sentence less than death would have incapacitated Grate, deterred him and others, and provided him with a chance for rehabilitation in prison." (*Id.* at p. 89). Grate acknowledges that the trial court dismissed this claim as barred by the doctrine of res judicata, but responds that "Grate's claim is that the trial court failed to follow Ohio statutory law because the purposes of felony sentencing enumerated in R. C. 2929.11 were neither mentioned or cited at court sentencing nor in the trial court sentencing opinion." (*Id.* at p. 90).

**{¶81}** The trial court must consider the purposes and factors contained in R.C. 2929.11 and 2929.12 but this Court has held that when the transcript of "the sentencing hearing is silent as to whether the trial court considered the factors in R.C. 2929.11 and 2929.12" a presumption arises "that a trial court considered the factors contained in R.C.

2929.12." *State v. Hannah*, 5th Dist. Richland No. 15-CA-1, 2015-Ohio-4438, ¶ 13. *Accord State v. Tenney,* 11th Dist. Ashtabula No. 2009-A-0015, 2010-Ohio-6248, 2010 WL 5289110, ¶ 14 and *State v. Crawford,* 5th Dist. Muskingum No. CT2021-0059, 2022-Ohio-3125, ¶ 18. Grate's complaint that neither the transcript nor the judgment entry contains the trial court's analysis of the facts fails on its merits, event if not barred by the doctrine of res judicata.

**{¶82}** Grate references materials that he claims will demonstrate the significant burden that a death sentence places on state and local governments and that had the trial court had this evidence, it would have found that a sanction less than death would accomplish the purposes of felony sentencing. The Supreme Court of Ohio addressed this issue in *State v. Belton,* 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶¶ 45-46, where "Belton cites studies documenting the expenses associated with the death penalty and asserts *173 that capital cases are "astronomically more expensive" than comparable noncapital cases." The Court noted that cost is not the only relevant factor in determining a sentence. The court must also consider the minimum penalty necessary to sufficiently punish an offender and "[i]n some cases then, a sentencing court may determine that the death penalty is, in fact, "the minimum sanction[ ]" that will accomplish its purpose of "punish[ing] the offender." R.C. 2929.11(A)."

**{¶83}** Grate relies on the decision in *State v. Bonness*, 8th Dist. Cuyahoga No. 96557, 2012-Ohio-474 to support his conclusion that an "unnecessary burden on state and local government resources has been enough to overturn serious convictions." (Appellant's Brief, p. 89). In *Bonness* the court "conclude[d] that the 40–year sentence imposed on Bonness for eight child pornography counts was inconsistent with sentences

imposed for similar crimes committed by similar offenders." *State v. Bonness*, 8th Dist. Cuyahoga No. 96557, 2012-Ohio-474, ¶ 29. The fact that Bonness would be imprisoned for the balance of his life and his end of life care would fall on the state was a consequence of the inconsistent sentence imposed upon him. The Eighth District found that an unnecessary burden arose from inconsistency in the sentencing resulting in a lengthier sentence than what the appellate court found appropriate.

{¶84} In the case before us, there is no argument that the sentence was inconsistent with similar offenders in similar crimes, so *Bonness* has little impact. Further, the holding in Bonness has not been adopted widely beyond the Eighth District Court of Appeals. We have instead found that we are bound by the Supreme Court of Ohio holding that R. C. 2953.08(G)(2) does not permit "an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649. Grate does not contend that the sentence is not within the statutory guidelines, nor does he offer any other basis to establish that the trial court exceeded its statutory authority. His argument falls short of persuading this court that there is clear and convincing evidence that the sentence was contrary to law.

{¶85} We find that Grate's claim that the court failed to consider the factors listed in R.C. 2929.11 is barred by res judicata and is without merit even if not barred. The addition materials submitted regarding the burden imposed by the death sentence failed to meet the required level of cogency to overcome the doctrine of res judicata as it may serve as documentation of the expense of such a penalty, but it does nothing to

demonstrate that the trial court did not properly consider whether the burden imposed by the sentence was unnecessary in the context of this case.

**{¶86}** The Eighth Assignment of Error is denied.

## IX.

**{¶87}** In his Ninth Assignment of Error, Grate claims the trial court abused its discretion when it denied his claim that Ohio's felony-murder capital specification is unconstitutional. He claims the trial court erroneously concluded that this was a purely legal argument that was barred by res judicata and that he has presented evidence regarding the application and impact of the Ohio's felony-murder specification.

**{¶88}** Grate's argument is primarily focused upon the available precedent. He begins by stating "The purpose of a capital specification is to narrow the class of offenders against whom the State may seek or impose the death penalty, as required by both the Ohio and Federal Constitutional prohibition of cruel and unusual punishment" and cites *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and *State v. Fitzpatrick,* 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 73. He follows with the statement "Ohio's felony-murder specification does not confine eligibility for the death penalty to the "worst of the worst" offenders. Rather, the sweeping language of the felony-murder specification captures an enormous number of offenses. *See State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 221 (Donnelly, J. concurring) ("Ohio's classification scheme is not adequately narrow, and our pool of death-eligible offenses is enormous... Felony murder is particularly problematic under Ohio's statutory scheme because the felony is the element that elevates the murder offense to aggravated murder, R.C. 2903.01(B)."). (Appellant's Brief, p. 93).

**{¶89}** Justice Donnelly's concurring opinion in *State v. Graham* makes it evident that the criticism of the breadth of the pool of offenses eligible for the death penalty in Ohio is readily available by review of the statutory language that exposes defendants to the death penalty. We find that the additional materials submitted by Grate to not rise to that level of cogency that would allow him to avoid the application of the doctrine of res judicata. As noted by the trial court, this is a legal argument and was available to be considered upon direct appeal. We find trial court did not abuse its discretion by denying this claim.

**{¶90}** The Ninth Assignment of Error is denied.

## X.

**{¶91}** Grate contends that the trial court abused its discretion when it denied his claims that Ohio's postconviction procedures are constitutionally inadequate in his Tenth Assignment of Error. Grate generally attacks the constitutionality of the postconviction procedures and also claims that the Covid-19 pandemic impacted his ability to develop a factual record.

**{¶92}** With regard to the direct attack on the constitutionality of the postconviction procedures, we agree with the trial court that this is a purely legal argument that has been resolved in several existing cases and that Grate has presented no evidence refuting that conclusion. Further, as a purely legal issue, Grate had the opportunity to pursue a direct appeal, failed to do so, and is now barred by the doctrine of res judicata. Grate does not submit evidence outside of the record supporting this portion of the Assignment of Error.

**{¶93}** Grade has submitted evidence he claims will demonstrate that the Covid-19 pandemic "limited petitioner's ability to travel, investigate, prepare and present claims

as well as restricted his ability to consult with experts and speak with witnesses." Grate does not contend that his counsel was ineffective for not seeking additional time to complete an investigation, that the trial court incorrectly denied him any continuance to obtain additional information and he has not directed us to any authority that supports a conclusion that the pandemic can be held responsible for lack of preparation. The documents provided by Grate did not rise to that level of cogency necessary to defeat the doctrine of res judicata.

**{¶94}** We find the trial court did not abuse its discretion in denying the Tenth Assignment of Error and deny it.

### XI. XII.

**{¶95}** In his Eleventh and Twelfth Assignments of Error, Grate claims trial court abused its discretion and denied Grate due process when it denied his claim that the Ohio's death penalty statute is unconstitutional and that lethal injection as administered in the state of Ohio violates the United States and Ohio Constitutions. Regarding the Eleventh Assignment of Error, Grate notes that "the trial court denied these grounds for relief because "none of the claims of unconstitutional have been accepted by many court * * *" and "they could have been raised on direct appeal." (Appellant's brief, p. 104). In an attempt to avoid the doctrine of res judicata, Grate states that he "offered evidence outside of the record for this court to determine the merits of these claims "as addressed in the First Assignment of Error." We have reviewed the First Assignment of Error and there is no reference within that assignment to evidence outside the record as that assignment address the trial court's adoption of findings of fact and conclusions of law as drafted by the State.

**{¶96}** In the Twelfth Assignment of Error, Grate argues that he "has alleged substantive grounds for relief--that Ohio's method of execution by lethal injection violates the U.S. and Ohio Constitutions. He has supported this ground with evidence outside the trial record." (Appellant's Brief, p. 109).

**{¶97}** Grate is not basing his claim on ineffective assistance of counsel and we find that the constitutionality of Ohio's Death Penalty Statute and the process of lethal injection were issues that could have been raised by counsel at trial and thereafter on direct appeal. The evidence cited by Grate in his brief were not part of the record, but it is evident that they were available to be presented to the trial court and later considered on appeal. Because Grate did not bring these issues to the attention of the trial court, we find that they are barred by the doctrine of res judicata and that the trial court did not abuse its discretion by not conducting a hearing.

**{¶98}** The Eleventh and Twelfth Assignments of Error are denied.

## XIII.

**{¶99}** In his Thirteenth Assignment of Error, Grate claims that trial court abused its discretion when it denied his claim that he was prejudiced by the cumulative errors that occurred at his capital trial, without allowing for an evidentiary hearing.

**{¶100}** Appellant cites the doctrine of cumulative error, references the previous assignments of error, but gives no analysis or explanation as to why or how the errors have had a prejudicial cumulative effect. It is simply not enough to intone the phrase "cumulative error." *State v. Sapp,* 105 Ohio St.3d 104, 822 N.E.2d 1239, 2004-Ohio-7008, ¶ 103 as quoted in *State v. Allen,* 5th Dist. Delaware No. 2009-CA-13, 2010-Ohio-4644, ¶ 254.

{¶101}    Further, we have denied all previous assignments of error, finding that the trial court did not err. Where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter,* Stark App. No. 2002CA00125, 2003-Ohio-1313 at ¶ 37. A cumulative-error analysis aggregates only actual errors to determine their cumulative effect. Individual rulings frequently will have an adverse effect on a party, but unless that party can demonstrate that the ruling was an error, reversal would not be warranted. Impact alone, not traceable to error, cannot form the basis for reversal. The same principles apply to a cumulative-error analysis, and we therefore hold that a cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors. *State v. Allen*, 5th Dist. Delaware No. 2009-CA-13, 2010-Ohio-4644, ¶ 257. As we have not found multiple instances of error, and because Grate has failed to provide any analysis in his claim, the Thirteenth Assignment of Error is overruled.

**{¶102}** The decision of the Ashland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

King, J. concu