[Cite as *State v. Carter*, 2023-Ohio-2918.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO. 1-23-03

     v.

TERREZ CARTER,               O P I N I O N

     DEFENDANT-APPELLANT.

STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO. 1-23-11

     v.

TERREZ CARTER,               O P I N I O N

     DEFENDANT-APPELLANT.

**Appeals from Allen County Common Pleas Court**
**Trial Court Nos. CR 2018 0187 and CR 2018 0275**

**Judgments Affirmed**

**Date of Decision: August 21, 2023**

APPEARANCES:

    *John M. Gonzales* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**POWELL, J.**

{¶1} Defendant-appellant, Terrez Carter ("Carter"), brings these appeals from the October 25, 2022, judgments of the Allen County Common Pleas Court denying his petitions for post-conviction relief. For the reasons that follow, we affirm the judgments of the trial court.

*Background*

{¶2} In two cases that were consolidated for trial, a jury convicted Carter of five counts of rape, possession of cocaine, and having weapons while under disability.[1] As a result of his convictions, Carter was sentenced to an aggregate 36-year prison term. Carter appealed his convictions and sentence to this court, and we overruled all of his assignments of error. *State v. Carter*, 3d Dist. Allen Nos. 1-21-19, 1-21-20, 2022-Ohio-1444. The Supreme Court of Ohio declined to accept Carter's discretionary appeal for review. *State v. Carter*, 2022-0689, 167 Ohio St.3d 1483, 2022-Ohio-2765.

{¶3} On September 8, 2022, Carter filed voluminous petitions for post-conviction relief in both trial court cases against him, asserting seven grounds for relief with various "subclaims." He attached numerous exhibits to his petitions, including multiple affidavits from individuals who claimed to have knowledge of,

---

[1] In trial court case CR2018 0275, Carter was convicted by a jury of five counts of rape in violation of R.C. 2907.02(A)(2), all first degree felonies, and in trial court case CR2018 0187 he was convicted of possession of cocaine in violation of R.C. 2925.11(A), a first degree felony, and having weapons while under disability in violation of R.C. 2923.13(A), a third degree felony.

*inter alia*, potential juror impropriety, or the ineffectiveness of Carter's trial counsel. The State filed a response to Carter's petitions, contending that a hearing was not warranted and that Carter's claims should be denied.

{¶4} On October 25, 2022, the trial court filed judgment entries denying Carter's petitions. The trial court determined that one of Carter's claims was barred by res judicata because it was raised on direct appeal and rejected. As to the claims Carter made that relied on evidence outside the record, the trial court determined that the evidence submitted was either self-serving or not sufficiently reliable. Further, the trial court emphasized that while Carter listed numerous claims and subclaims, many of his claims and subclaims were just repackaged versions of other claims in the same petitions. In sum, the trial court determined that where Carter's claims were not barred by res judicata, he "did not point to or submit with his petition credible evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief." (CR2018 0187, Doc. No. 262). Carter's petitions were thus denied without a hearing. It is from these judgments that Carter appeals, asserting the following assignments of error for our review.

### First Assignment of Error

**The trial court failed to afford Mr. Carter the statutory requirements contained in the post-conviction petition, that violated Mr. Carter's right to Due Process found in the Fourteenth Amendment to the United States Constitution.**

**Second Assignment of Error**

Mr. Carter received ineffective assistance of counsel. This violated Mr. Carter's Sixth Amendment right to effective counsel, and his Fourteenth Amendment right to Due Process. This, and the subclaims related to this, are in relation to claim one and the sub claims related to claim one in the original post-conviction petition in the trial court.

**Third Assignment of Error**

The State failed to disclose favorable evidence violating Mr. Carter's right to Due Process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

**Fourth Assignment of Error**

There was extreme juror misconduct, this violated Mr. Carter's right to Due Process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

**Fifth Assignment of Error**

Misconduct by the State violated Mr. Carter's right to Due Process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

**Sixth Assignment of Error**

The failure of the State to disclose material information prevented Mr. Carter from presenting a complete defense, this is a violation of Mr. Carter's Due Process and the right to a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

**Seventh Assignment of Error**

Mr. Carter has a fundamental right to a public trial. The State precluded spectators from hearing the voice on the recording. There were friends and relatives of the accused that could have

**determined the voice not to be that of the accused. This violated Mr. Carter's right to a public trial.**

**Eighth Assignment of Error**

**The voir dire/jury selection process along with the jurors that were seated denied Mr. Carter Due Process of law and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.**

{¶5} For ease of discussion, after setting forth the applicable standard of review and the legal authority governing postconviction proceedings, we elect to address some of the assignments of error together, and we elect to address them out of the order in which they were raised.

*Standard of Review*

{¶6} We review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing, under an abuse of discretion standard. *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, ¶ 38. An abuse of discretion entails a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Legal Authority Governing Postconviction Proceedings*

{¶7} Revised Code 2953.21 provides for a postconviction relief process that is a civil collateral attack on a criminal judgment, not an appeal of that judgment. *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). A petition for postconviction relief is a means by which the petitioner may present issues that would otherwise be

unreviewable on direct appeal because the evidence supporting those issues is not included in the record of the petitioner's criminal conviction. *State v. Carter*, 10th Dist. Franklin No. 13AP-4, 2013-Ohio-4058, ¶ 15. Postconviction review is not a constitutional right but, rather, it is a narrow remedy which affords the petitioner no rights beyond those granted by statute. *Calhoun* at 281-282. A postconviction relief petition does not provide the petitioner a second opportunity to litigate his or her conviction. *Carter* at ¶ 15.

{¶8} "In postconviction cases, a trial court has a gatekeeping role as to whether a defendant will even receive a hearing." *State v. Condor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 51. A petitioner is not automatically entitled to an evidentiary hearing on a postconviction petition. *State v. Jackson*, 64 Ohio St.2d 107, 110-113 (1980). To warrant an evidentiary hearing, the petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. *Id.* The evidence must show that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States. *Calhoun* at 282-83. A trial court has a statutorily imposed duty to ensure that the defendant meets this burden. *State v. Cole*, 2 Ohio St.3d 112, 113 (1982).

{¶9} "In reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath

and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *Calhoun*, at paragraph one of the syllabus. "Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Id.* at paragraph two of the syllabus. Moreover, "[a] petitioner is not entitled to a hearing if his claim for relief is belied by the record and is unsupported by any operative facts other than Defendant's own self-serving affidavit or statements in his petition, which alone are legally insufficient to rebut the record on review." *State v. Blanton*, 4th Dist. Adams No. 19CA096, 2020-Ohio-7018, ¶ 10.

{¶10} Finally, we emphasize that a trial court may also dismiss a petition for postconviction relief without holding an evidentiary hearing when the claims raised are barred by res judicata. *State v. Szefcyk*, 77 Ohio St.3d 93 (1996), syllabus. Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised, or could have been raised, by the defendant at the trial which resulted in that judgment of

conviction or on an appeal from that judgment. *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). Res judicata is applicable in all postconviction proceedings. *Szefcyk* at 95.

{¶11} To overcome the res judicata bar, the defendant must offer competent, relevant and material evidence, outside the trial court record, to demonstrate that the defendant could not have appealed the constitutional claim based upon information in the original trial record. *State v. Braden*, 10th Dist. Franklin No. 02AP-954, 2003-Ohio-2949, ¶ 27. "The evidence offered in support must 'advance the petitioner's claim beyond a mere hypothesis.'" *State v. Murphy*, 10th Dist. Franklin No. 15AP-460, 2015-Ohio-4282, ¶ 16, quoting *State v. Lawson*, 10th Dist. Franklin No. 02AP-148, 2002-Ohio-3329, ¶ 15. "Additionally, the petitioner must not rely on evidence that was in existence or available for use at the time of trial and that the petitioner should have submitted at trial if he wished to make use of it." *Id.*

{¶12} Ohio Appellate Courts have held that "evidence outside the record alone will not guarantee the right to an evidentiary hearing." *State v. Grate*, 5th Dist. Ashland No. 22-COA-029, 2023-Ohio-2103, ¶ 24, citing *State v. Combs*, 100 Ohio App.3d 90, 97 (1st.Dist.1994). The evidence must meet a "threshold standard of cogency," otherwise "it would be too easy to defeat the holding of [*State v. Perry*]" by merely attaching exhibits with only marginal significance." *Id*. The evidence

presented must not be merely cumulative of or alternative to evidence presented at trial. *Id.*

*Seventh Assignment of Error*

{¶13} In Carter's seventh assignment of error, he argues that his right to a public trial was violated when spectators were removed from the courtroom while video clips of Carter and one of the rape victims were played, depicting, *inter alia*, one of the rape incidents. As the trial court determined, Carter's argument in this assignment of error is directly barred by res judicata because he raised it in his direct appeal and it was rejected by this court. *State v. Carter*, 3d Dist. Allen Nos. 1-21-19, 1-21-20, 2022-Ohio-1444, ¶ 31-43. His seventh assignment of error simply repackages and reargues what he already raised previously, albeit from a different angle. Therefore, based on res judicata, Carter's seventh assignment of error is overruled.

*Second Assignment of Error*

{¶14} In his second assignment of error, Carter argues that he received ineffective assistance of trial counsel. Carter's assignment of error is premised on thirteen "subclaims" wherein he claims his trial counsel was deficient.

Legal Authority Governing Ineffective Counsel Claims

{¶15} To establish a claim of ineffective assistance of counsel in a postconviction petition, a petitioner must show that his attorney's performance was

deficient *and* that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In postconviction proceedings, the petitioner bears the initial burden of submitting evidentiary materials containing sufficient operative facts to demonstrate the lack of competent counsel and prejudice resulting from counsel's ineffectiveness. Under *Strickland*, "scrutiny of counsel's performance must be highly deferential." *Strickland* at 689. Thus, "in order to secure a hearing on his petition," Carter was required to "proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to [him]." *State v. Cole*, 2 Ohio St.3d 112, 114 (1982).

*Analysis*

{¶16} We will address each of the subclaims presented by Carter, combining them where they overlap.

Subclaims 1 and 2

{¶17} In his first and second subclaims, Carter contends that his trial counsel was ineffective for failing to properly object at trial to a video recording of Carter and one of the rape victims that depicted, *inter alia*, one of the alleged rapes. On the videos, Carter repeatedly told S.H. to "open her legs" and she refused. At one point Carter said that he was going to "forcefully" open her legs, but he was not going to

"rape her." (State's Ex. 61). Later, Carter recorded himself digitally penetrating S.H. while she cried. As he performed the act, he said things like S.H. was crying because she "love [sic] it." (*Id.*)

{¶18} Carter's trial counsel filed a motion in limine seeking to prevent the videos from being introduced at trial. Then, after his motion was overruled, Carter's trial counsel objected to the videos being played at trial. Despite trial counsel clearly objecting to the videos, Carter is now contending that his trial counsel was ineffective for failing to object for *additional reasons*. Specifically, he argues that his attorney should have claimed that the videos were not analyzed by an expert despite funds being secured for analysis. However, we have no indication that an analysis would have provided anything favorable to Carter's defense beyond this Court's speculation, which is insufficient to grant postconviction relief. *See State v. Maxwell*, 8th Dist. Cuyahoga No. No. 107758, 2020-Ohio-3027, ¶ 66.

{¶19} Moreover, Carter's claims do nothing to undermine the admissibility of the videos, which were found on a SIM card during a search of Carter's residence. S.H. identified Carter as the individual on the videos with her. Carter's claims that there were somehow questions to the validity of the videos are wholly unsupported.

{¶20} Furthermore, Carter's claims regarding trial counsel's failure to have the videos analyzed are also specious. He supports his contention with an affidavit

of a man named "Charles Reader." This affidavit contains two statements, consisting of the following:

> 1)   I asked to be provided with a copy of the videos and the police declined to provide them to me.
>
> 2)   The police did not share with me why they were reluctant to provide a copy of the evidence to me and I'm not in a position to guess why they did not.
>
> FURTHER AFFIANT SAYETH NAUGHT.

(CR 2018 0187, Doc. No. 258, Ex. 1).

{¶21} "Charles Reader's" affidavit contains no indication of who he is or when he even attempted to obtain a video from "the police." In his brief, Carter calls Reader an "expert" and "a respected video and voice analyst." (Appt.'s Brief at 3). Reader could be the foremost expert in the world but we would have no way of knowing that based on his affidavit. Moreover, it is unclear whether Reader is contending that he tried to obtain a copy of the video prior to trial or whether he could not obtain a copy to review for these postconviction proceedings. Regardless, Reader's affidavit establishes no evidence that Carter's trial counsel was deficient, particularly given S.H.'s testimony. The speculation required to assume that an analysis was not done, and that if an analysis was done it would have been helpful to the defense such that an error was prejudicial is improper based on the evidence.

**{¶22}** Finally, we note that the decision to utilize an expert at trial is typically part of trial strategy. *See State v. Thompson*, 33 Ohio St.3d 1, 10-11 (1987). For all of these reasons, Carter's first and second subclaims are not well-taken.

Subclaim 3

**{¶23}** In his third subclaim, Carter argues that evidence at trial indicated there were other people at Carter's residence prior to the rape incidents of S.S., and that one of the individuals should have been called by trial counsel to testify. Specifically, Carter contends that trial counsel should have presented the testimony of a witness who was at Carter's residence prior to the alleged rape incidents of S.S., even though that witness did not see anything related to the rapes and was not present based on S.S.'s testimony. We find no error here, let alone prejudicial error, as there is no indication that the witness had any information relevant to the actual crimes.

Subclaim 4

**{¶24}** In Carter's fourth subclaim, he contends that another witness who submitted an affidavit should have been called at trial to testify that S.H. had been selling drugs out of Carter's residence *in 2017* and that S.H. "expressed her willingness to get even with Carter for calling police when she rammed his car." (Ex. 4). The affiant also alleged that S.H. had "told many in my presence that she wished she never falsely accused [Carter] of rape." (*Id.*)

**{¶25}** First, drug sales in 2017 by S.H. in Carter's residence, if accurate, would have no bearing on Carter's drug possession in 2018 when the search warrant of his residence was executed, particularly given that S.H. was not living at the residence at that time. In addition, the other rape victim, S.S., indicated that Carter was providing her with cocaine prior to her rape incident, shortly before the actual search of Carter's residence took place.

**{¶26}** Second, the affiant's claim regarding the car-ramming incident was presented in the record. *State v. Carter*, 3d Dist. Allen Nos. 1-21-19, 1-21-20, 2022-Ohio-1444, ¶ 90. Third, and finally, there is no indication that the affiant was unavailable to testify, thus her statements regarding S.H. constituted hearsay, and there is no indication they would have been admissible at trial. Finally, testimony at trial was already presented that S.H. called Carter in the week before trial and tried to get him to pay her to change her testimony. *Id*. ¶ 94. Thus this evidence is largely cumulative to what was already in the record for the jury to consider. For all of these reasons, we reject Carter's arguments.

Subclaims 5, 6, and 7

**{¶27}** In Carter's fifth, sixth, and seventh subclaims, he makes various arguments that his counsel was ineffective during jury selection by not asking pertinent questions or by not delving deeper into the fact that one of the jurors was a chaplain for law enforcement. When evaluating ineffective assistance during voir

dire, the Supreme Court of Ohio has "consistently declined to 'second-guess trial strategy decisions' or impose 'hindsight views about how current counsel might have voir dired the jury differently.'" *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 63, quoting *State v. Mason*, 82 Ohio St.3d 144, 157 (1998). Decisions regarding voir dire are highly subjective and prone to an individual attorney strategy because they are based on intangible factors. *Mundt* at ¶ 64, citing *Miller v. Francis*, 269 F.3d 609, 620 (6th Cir.2001). Accordingly, "counsel is in the best position to determine whether any potential juror should be questioned and to what extent." *State v. Murphy*, 91 Ohio St.3d 516, 539 (2001).

**{¶28}** Here, the jurors were questioned and indicated that they could look at all the evidence fairly and impartially, including the chaplain. Further, as the trial court indicated, the chaplain's position, and his contacts with law enforcement, the judge, and the prosecutor were all presented during voir dire.

**{¶29}** As to the affidavit challenging the other juror, this affidavit lacks specificity and credibility, particularly given that the jurors indicated they could be fair and impartial. Finally, Carter has not established any credible claims of "actual bias," which are required to support reversal here. *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 76. After reviewing subclaims 5, 6, and 7, and after reviewing Carter's "evidence" presented in his postconviction petitions, we find no prejudicial error here.

Subclaim 8

**{¶30}** In his eighth subclaim, Carter argues that his counsel was ineffective for failing to object to a warrant for his DNA that he says was not signed by a judge. However, the warrant in question contains, by all accounts, the signature of a judge above the line "signature of Judge." (CR 2018 0187, Doc. No. 258, Ex. 8). We have no indication to the contrary, thus we reject Carter's argument.

Subclaims 9 and 10

**{¶31}** In his ninth and tenth subclaims, Carter contends that his trial counsel should have objected to the chain of evidence with regard to his DNA and that trial counsel should have argued that there was initially no match with the DNA collected from one of the rape victims to his DNA in the CODIS database even though Carter's DNA was purportedly already in the database. However, there is no indication that the DNA that matched Carter's at trial, which was taken from the victim, was not his, and we cannot find any prejudicial error or failure on behalf of Carter's trial counsel. Carter's arguments rely on pure speculation, which is, again, not appropriate grounds for granting a hearing or granting postconviction petitions.

Subclaim 11

**{¶32}** In his eleventh subclaim, Carter contends that his counsel failed to investigate whether S.H. was romantically involved with the investigating officer in this case. He supports his claim with an affidavit of a woman who claims she once

overheard S.H. tell another woman that she was sleeping with the investigating officer. The trial court found this evidence not to be credible and, given the tenuous connection, we find no abuse of discretion with the trial court's determination. Further, this would have no bearing on the testimony of the actual victims in this matter. Thus we reject Carter's argument.

Subclaim 12

{¶33} In his twelfth subclaim, Carter argues that his counsel was ineffective for not calling a witness who would have testified that Carter did not actually have a firearm despite a firearm being found in his residence during the search. However, it appears the witness he is referencing is actually Sarah H.., who testified at trial that Carter did, in fact, have a firearm. (Tr. at 568). Moreover, his new claim is merely an alternative argument to those already contained in the record, and will not support reversal here. Finally, the decision regarding whether to call a witness falls within the "rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh,* 90 Ohio St.3d 460, 490, 2001-Ohio-4. Thus this argument is rejected.

Subclaim 13

{¶34} In his thirteenth subclaim, Carter argues that trial counsel failed to properly impeach two prosecution witnesses with criminal records. However, counsel questioned the credibility of the witnesses through other means, and we will

not second-guess trial counsel's decisions on cross-examination. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146. Moreover, it is not entirely clear from the record that the convictions would have been admissible at trial. Thus, his arguments are rejected.

{¶35} In sum, having found no abuse of discretion in the trial court's rejection of the thirteen subclaims in Carter's second assignment of error, the assignment of error is overruled.

### *Third Assignment of Error*

{¶36} In his third assignment of error, Carter argues that the State failed to disclose favorable evidence, violating Carter's right to due process and a fair trial. He asserts six subclaims under this assignment. We will address each subclaim in turn.

### Subclaim 1

{¶37} In his first subclaim, Carter argues that the State failed to disclose that one of the potential jurors was a chaplain for law enforcement with connections to the judge and prosecutor. However, this information was revealed during voir dire, thus there could be no prejudicial error here. Therefore, this argument is rejected.

### Subclaim 2

{¶38} In his second subclaim, Carter argues that the State failed to disclose that the investigating officer was romantically involved with S.H. We find no error

with the trial court's determination that there is no credible information to support this accusation, thus this argument is rejected.

Subclaim 3

**{¶39}** In his third subclaim, Carter contends that the State failed to disclose the prior criminal records of two witnesses. However, we have no indication that requisite criminal records were not disclosed, or that they were admissible. Further, there's no indication that any disclosure would have altered the case. Therefore we reject this argument.

Subclaim 4

**{¶40}** In his fourth subclaim, Carter contends that the State failed to disclose that the "voice analyst," Charles Reader, was "turned away" by the State when attempting to obtain the recording of Carter with the rape victim so that the voice could be analyzed. We have no credible evidence to support this being the case. Moreover, it is clear defense counsel had access to the recording given that he filed a motion in limine regarding it, so it is unclear how there was any failure to disclose here. Thus this argument is rejected.

Subclaim 5

**{¶41}** In his fifth subclaim, Carter contends that the State failed to disclose the fact that Detective Stechschulte handled the DNA swab from Carter when "he was court ordered not to handle" it. This is an inaccurate statement and there is no

indication in the record the detective was court-ordered not to handle the evidence; rather, Carter just preferred that the swab was done by an "Officer Carman." (Feb. 8, 2019, Tr. at 25). There was never any order that the detective refrain from handling or processing the evidence. Thus this argument is rejected.

Subclaim 6

{¶42} In his sixth subclaim, Carter contends that the State failed to disclose that the warrant for the DNA was not signed by a judge. However, the warrant, by all accounts, was provided, and it does have the signature of a judge. Carter's arguments are inaccurate, and they are rejected.

{¶43} In sum, having found no abuse of discretion in the trial court's rejection of the six subclaims in Carter's third assignment of error, the assignment of error is overruled

*Fourth Assignment of Error*

{¶44} In his fourth assignment of error, Carter argues that there was "extreme juror misconduct." He has two subclaims in this assignment of error.

Subclaim 1

{¶45} In his first subclaim, Carter contends that one of the jurors knew Carter and failed to disclose that issue. The trial court determined that Carter's "evidence" on this issue was not credible, and we find no abuse of discretion with the trial court's determination. Thus we reject this argument.

## Subclaim 2

**{¶46}** In his second subclaim, Carter contends that jurors answered voir dire questions dishonestly. He also contends that the required face-coverings made it impossible to determine who was on the jury. Again, we find no abuse of discretion with the trial court's determination that Carter's claims are not credibly supported. Therefore, we reject Carter's argument.

**{¶47}** In sum, having found no abuse of discretion in the trial court's rejection of the two subclaims in Carter's fourth assignment of error, the assignment of error is overruled

### *Fifth Sixth, and Eighth Assignments of Error*

**{¶48}** In Carter's fifth, sixth, and eighth assignments of error, he makes numerous arguments and sub-arguments that simply constitute rewording or rehashing claims he makes earlier in his brief. As these arguments have already been rejected, they are again rejected, despite being packaged differently. Therefore, these assignments of error are overruled.

### *First Assignment of Error*

**{¶49}** In his first assignment of error, Carter argues that the trial court failed to comply with R.C. 2953.21 when it denied his petitions for postconviction relief. More specifically, he argues that the trial court erred by determining that at least

one of his claims was barred by res judicata, and that the trial court did not conduct a proper review process when considering his postconviction petitions.

**{¶50}** First, we have already determined that the trial court properly found that one of Carter's claims was barred by res judicata, so the trial court's statement was not erroneous.

**{¶51}** Second, Carter mischaracterizes the trial court's judgment entry by claiming that the trial court effectively determined that the information provided in the affidavits was already contained in the record. This is inaccurate, as the trial court directly states that where "the defendant's claims were not barred by res judicata, there is no merit to any of them." The trial court then gave some examples of how there was no merit to Carter's claims, finding them, *inter alia*, not to be credible. While the trial court's analysis was succinct, and did not respond to every single argument made by Carter in his claims and subclaims, we do not find an abuse of discretion here, particularly given that so many of the arguments are red herrings and rely on speculation. Therefore, Carter's arguments are rejected, and his first assignment of error is overruled.

*Conclusion*

**{¶52}** Having found no error prejudicial to Carter in the particulars assigned and argued, his assignments of error are overruled, and the judgments of the Allen

Case No. 1-23-03

County Common Pleas Court are affirmed.

***Judgments Affirmed***

**MILLER, P.J. and ZIMMERMAN, J., concur.**

**/jlr**


**\*\* Judge Stephen W. Powell of the Twelfth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**